## UNITED STATES v. LATIN et al.

Nos. 120, 139.

Circuit Court of Appeals, Second Circuit.

Dec. 20, 1943.

George Hoffenberg, of Rochester, N. Y., for appellant Joseph Paladino.

Henry Epstein, of New York City, and Anthony S. Picciotti, of Rochester, N. Y., for appellant Thomas Latin.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Goodman A. Sarachan, Asst. U. S. Atty., of Rochester, N. Y., of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellants were tried and convicted in the District Court for the Western District of New York on an indictment charging them with having conspired with others to defraud the United States by setting up an unregistered still for the manufacture of alcohol to be possessed and sold without the payment of the stamp taxes required by law.

The principal issue is whether the evidence was sufficient to support the verdict. That it was not sufficient is the only ground for reversal upon which appellant Latin

relies, and that contention can be dealt with adequately in connection with the same point raised by Paladino, who also presents other questions for review.

■ There was evidence sufficient to enable the jury to find that several conspirators, of whom one Stein, who pleaded guilty and testified as a government witness, was the leading spirit, arranged to set up an unregistered still first in one, and then in another, location in Rochester, N. Y., that their plan was to manufacture and sell alcohol; that they did so to some extent and for a short time in each of those places and then moved to what was thought to be a better location in a smaller community a short distance outside the city. In this last place the still was operated for the purposes of the conspiracy until agents of the United States Alcohol Tax Unit seized it. This seizure and the arrests which followed brought an end to the venture.

These appellants, who were friends of Stein and one of them his former business associate, do not question the existence of the conspiracy but deny that they were participants. As to that, the evidence was disputed; but it was sufficient, if believed by the jury, to show the following facts: During the time the conspiracy was being carried out, these two appellants drove together from Rochester to New York City in Paladino's car and shared a room at the Hotel New Yorker for several days. While they were there Latin assisted Paladino, whose command of English was less good than his, to make two telephone calls to Stein in Rochester and listened to what Paladino said to him. Following these telephone calls, Stein sent $700 to Paladino by telegraph, for which the latter was given a draft by the Western Union Telegraph Company which he cashed at once at the hotel where he was staying; and Stein wired Paladino at the same time he sent the money as follows: "Herb Davis with Federal Transport ship via N. Y. Motor Lines—424 Greenwich Street." About two weeks later a shipment in boxes was received at the address given, which was the Rochester address of a carrier of freight by motor which was the company that made local deliveries in Rochester of freight carried by New York Motor Lines. Not long after the boxes arrived at Rochester an undisclosed person telephoned the receiving station there that the shipment would be called for, and later two men, of whom one was appellant Latin, did call for the boxes and take them away. It was also proved that these boxes contained columns which were used in setting up the unregistered still already mentioned. In addition it was shown that when Stein was searched after his arrest, two pieces of paper were taken from him on which were entries in his handwriting to the effect that he had wired the $700 to "J. P.," and other notations, in part as follows:

| " T. Latin | Trip to N. Y. | 30.00 |
| Carting | T. L. | 20.00 |
| T. L. | Tanks | 130.00 |
| T. L. | Ck. 9/19/40 | 20.00 |
| T. L. | Cash 9/20/40 | 20.00 |
| 9/28/40 | T. L. | 5.00 |
| 9/30/40 | T. L. | 25.00 |
| 10/4 /40 | T. L. | 20.00 |
| 10/5 /40 | T. L. | 20.00 |
| T. L. N. Y. trip | | 20.00 |
| Carting | T. L. | 10.00 |

All this was clearly sufficient to take the issue to the jury, and the motions for directed verdicts were rightly denied. It follows that unless the points which Paladino has raised concerning what happened during the trial amount to reversible error, the judgment must stand as to both.

■ The first such assignment was the refusal of the trial judge, after he had defined the term "reasonable doubt," to add upon request that it "also meant that they [the jury] must be convinced to a moral certainty." This may well be so, and yet the judge was not required to comply with such a request. He had already covered the subject adequately and correctly. Nothing useful would have been added by using a term like "convinced to a moral certainty," which instead of explaining anything more clearly might create a need for further explanation. Hopt v. Utah, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708.

■ The final question is whether it was error to exclude evidence of Paladino's reputation as to moral character and to confine the inquiry to that of his reputation for truth and veracity. Three witnesses testified that the latter was good. We assume that one of them, who was the only one asked about it, would also have testified, but for an objection which was sustained, that his moral character was reputably good. This was admissible evidence. Edginton v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467; Kaufmann v. United States, 3 Cir., 282 F. 776. Yet it was not necessarily harmful error to ex-

clude it in this instance. This appellant testified in his own behalf and denied all participation in the conspiracy. If the jury believed him his acquittal was bound to follow. He thus made his credibility as a witness an issue of paramount importance and as to that trait of character most directly involved he was permitted to introduce whatever evidence he offered. He therefore had the benefit of this kind of evidence in its most helpful form. In view of that, none of his substantial rights were affected by the exclusion and there was no reversible error. 28 U.S.C.A. § 391.

Affirmed.