John Larry RAY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 78–1227.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 24, 1978.

Decided Dec. 7, 1978.

John Larry Ray, pro se.

Robert D. Kingsland, U. S. Atty. and Mark A. Helfers, Asst. U. S. Atty., St. Louis, Mo., filed brief for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

John Larry Ray appeals from the District Court's order denying his motion to vacate sentence, filed pursuant to 28 U.S.C. § 2255. We affirm.

The appellant and three others (Ronald Goldenstein, Jerry Miller and James Benny) were indicted on a charge of aggravated bank robbery in violation of 18 U.S.C. § 2113(a), (d). The charge arose from the October 26, 1970, robbery of the Bank of St. Peters, Missouri. The appellant and Goldenstein pled not guilty, were tried jointly and were both convicted.[1] The appellant was sentenced to eighteen years imprisonment and Goldenstein to thirteen years. On appeal, Goldenstein's conviction was reversed due to an invalid search, but the appellant's conviction was affirmed. *United States v. Goldenstein,* 456 F.2d 1006 (8th Cir. 1972), *cert. denied sub nom., Ray v. United States,* 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974). On retrial, Goldenstein was acquitted.

1. Codefendant Miller eluded authorities until December, 1972, when he was apprehended in Fresno, California. Pursuant to Fed.R.Crim.P. 20, his case was transferred to the Eastern District of California, where he pled guilty and was sentenced. Codefendant Benny was killed prior to trial.

On December 12, 1977, the appellant filed the instant motion to vacate sentence, in which he alleged four grounds for relief: (1) that he was denied a fair trial; (2) that he was convicted as an aider and abettor, and because the principal's (Goldenstein's) conviction was reversed and an acquittal followed at retrial, his conviction cannot stand; (3) that his sentence was cruel and unusual because he received eighteen years whereas a codefendant (Miller) received a provisional three-year sentence, later reduced to eighteen months; and (4) that the United States Parole Commission erroneously denied him parole. The District Court referred the case to the United States Magistrate for a report and recommendation pursuant to 28 U.S.C. § 636(b). The magistrate's report concluded that the case should be dismissed. The District Court adopted the magistrate's recommendation, and this timely appeal was taken. The appellant contends that he was entitled to an evidentiary hearing on his claims.

Prior to discussing the appellant's claims, we briefly recite the evidence adduced at the appellant's trial.

At approximately 1:20 P.M. on October 26, 1970, three armed men entered the Bank of St. Peters, Missouri. The men wore stockings over their faces, at least two wore hats and all wore green rubber gloves. After taking in excess of $50,000 from the bank, the robbers fled in a light blue over dark blue 1954 Lincoln and were seen heading west on Salt River Road. About a mile down the road, the car pulled over into a ditch. About one minute later, a second car arrived and the three men got out of the Lincoln and entered a white and red 1966 Oldsmobile identified as belonging to the appellant. The Oldsmobile then proceeded onto Highway 79 where a police car had set up a roadblock. As the car approached the roadblock, it stopped, turned around on a bridge and drove off in the opposite direction. In the process of turning around, some paint from the car scraped off on the bridge.[2] A St. Charles County police officer stopped the 1966 Oldsmobile at 2:07 P.M.

and arrested the appellant, who was the sole occupant. A fragment of a green rubber glove was found in the car. A search of the abandoned 1954 Lincoln, which was also identified as having been purchased on behalf of the appellant, turned up another piece from a green rubber glove.

In November, 1970, James Allen Benny was shot and killed in a Portland, Oregon, hotel. During the investigation of the killing, a search of a room rented by Ronald Goldenstein turned up a suitcase containing $1,000 in $20-dollar bills which exactly matched the serial numbers of a $1,000 packet of "bait money" taken from St. Peters Bank.

There was testimony linking Goldenstein, Benny, the appellant and one Jerry Lee Miller. Miller was the only robber identified by any of the bank employees, and he escaped capture until 1972. Other evidence will be discussed as it is relevant to the claims raised by the appellant.

## A. Fair Trial.

 The appellant contends that his trial was "pre-fixed" by the government—apparently because of the appellant's relationship with his brother, James Earl Ray. As the magistrate noted in his report and recommendation, the "petition is a lengthy recitation of conclusions and speculations as to facts which [appellant] argues, tend to establish that he was denied a fair trial."

The most substantial of appellant's allegations is that agents of the Federal Bureau of Investigation coerced the appellant's codefendant, Goldenstein, into not testifying at his and the appellant's trial. According to an affidavit executed by the appellant, Goldenstein told the appellant that the authorities threatened to prosecute Goldenstein for the murder of James Benny unless Goldenstein did not testify at trial. Had Goldenstein testified at trial, it is alleged that he would have testified that the money discovered in his hotel room belonged to James Benny and that Benny had given him the money for safekeeping.

2. The paint was identified as having come from the 1966 Oldsmobile.

Prosecutorial misconduct, such as the use of perjured testimony, or other governmental corruption of the truth-finding process may result in a deprivation of fundamental due process. *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The fact that the alleged misconduct involves the F.B.I., rather than individuals in the prosecutor's office per se, does not change this result since, in either case, the government is involved in corruption of the truth-seeking function of the trial process. *United States v. Sutton,* 542 F.2d 1239, 1241 n.2 (4th Cir. 1976). *See also Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. 763. In such cases, the standard to be applied in determining whether a new trial should be granted is whether there is any reasonable likelihood that the new evidence could have affected the judgment of the jury. *United States v. Agurs, supra,* 427 U.S. at 103, 96 S.Ct. at 2397.

Our review of the record satisfies us that there is no reasonable likelihood that Goldenstein's testimony would have affected the judgment of the jury. Whether the money was in the possession of Benny or Goldenstein on the night in question, there was very strong evidence that Benny and Goldenstein were acting in concert. One Jack Tyra testified that he (Tyra), Benny, Goldenstein and Jerry Miller had "cased" the St. Peters Bank and nearby roads about a week before the robbery. Also, Donna Rohr testified that she, Goldenstein and Benny had taken a three-week trip across the country shortly after the robbery, during which time Benny and Goldenstein discussed the robbery. Finally, Benny and Goldenstein were both registered under assumed names at the Cornelius Hotel in Portland, Oregon,

at the time when the money was recovered.[3] In short, Goldenstein's implication that he was an innocent bystander is overwhelmingly contradicted by other evidence.

Moreover, even if Goldenstein's statement is deemed to be credible, it could have no effect on the appellant's liability as an aider and abettor. The above-recited evidence links Benny to the robbery and the evidence clearly showed that the appellant had driven the "switch car" in which the robbers made their escape.

The appellant also claims that a Portland, Oregon, police officer either gave perjured testimony or falsified a police report relating to the search of Goldenstein's hotel room. We need not address this issue since the testimony, which is allegedly perjured, and the discrepancies between the officer's testimony and the police report relate solely to the issue as to whether there was probable cause for the search of Goldenstein's hotel room, a matter which the appellant has no standing to challenge. *United States v. Goldenstein, supra* at 1013.

### B. *Aiding and Abetting.*

■ The appellant next contends that he was convicted on an aiding and abetting theory and, because the conviction of one of the principals (Goldenstein) was reversed on appeal and the principal was acquitted on retrial, that his conviction must also be vacated.[4]

Since the abandonment of the common law distinctions between principals and accessories, the general rule has developed that conviction of a principal is not necessary for conviction of another on an aiding and abetting theory. *See* W. LAFAVE & A. SCOTT, CRIMINAL LAW § 63 at 501 (1972). This Court has expressed this general principle regarding aiding and abetting liability as follows:

---

**3.** In addition, Goldenstein's statement to the effect that the money was in Benny's suitcase is contradicted by the testimony of Officer David Ueland, who said he found the money in a brown suitcase with straps, and by the testimony of Donna Rohr, who said that Goldenstein's suitcase was a brown leather one with straps and that Benny's suitcase was blue.

**4.** Under this heading, the appellant also attacks the sufficiency of the evidence to support his conviction. Such a claim is not cognizable in a § 2255 proceeding. *See United States v. Norton,* 539 F.2d 1194, 1195 (8th Cir. 1976).

In order to sustain the conviction of a defendant who had been charged as an aider or abettor, it is necessary that there be evidence showing an offense to have been committed by a principal and that the principal was aided or abetted by the accused, although it is not necessary that the principal be convicted or even that the identity of the principal be established.

*Pigman v. United States,* 407 F.2d 237, 239 (8th Cir. 1969), *quoting Hendrix v. United States,* 327 F.2d 971, 975 (5th Cir. 1964).

In this case, it is conceded that three men robbed the Bank of St. Peters and the evidence was overwhelming that the appellant aided and abetted the robbers by driving the Oldsmobile "switch car."

### C. *Excessive Sentence.*

The appellant contends that his sentence amounts to cruel and unusual punishment because he received a substantially longer sentence than his codefendant Miller. The fact that the codefendants received different sentences does not, standing alone, rise to the level of an "exceptional circumstance" allowing appellate review, especially where the sentences were imposed by different judges. *See United States v. Truelove,* 482 F.2d 1361 (4th Cir. 1973). Nor does any other "exceptional circumstance" appear of record.

### D. *Denial of Parole.*

The appellant seeks to challenge the denial of parole by the United States Parole Commission. We find this claim wholly without merit.

The order of the District Court is affirmed.