**Samuel Howard PEELER and Dennis Alan Peeler, Appellants,**

v.

**Donald WYRICK, Warden and Attorney General, State of Missouri, Appellees.**

No. 82–2084.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1983.

Decided May 15, 1984.

Rehearing and Rehearing En Banc Denied June 15, 1984.

Haller, Leonard & Tripp, P.C. by Donald W. Tripp, Clayton, Mo., for appellants.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

ROSS, Circuit Judge.

Petitioners Samuel Howard Peeler and Dennis Alan Peeler appeal from a final order entered in the District Court for the Eastern District of Missouri denying their joint petition for writ of habeas corpus under 28 U.S.C. § 2254. *Peeler v. Wyrick,* No. 80–1617C(4) (E.D.Mo. July 29, 1982) (order denying petition). The district court found that a defense character witness had been intimidated and for that reason did not testify at petitioners' trial but that, under the circumstances, the intimidation was not chargeable to the prosecution. Slip op. at 2. The district court also found that petitioners had not been prejudiced by the witness' failure to testify. For the reasons discussed below, we affirm the order of the district court.

## I.  *Background Facts*[1]

Petitioners, father and son, were codefendants in a state court murder trial in 1978. According to the prosecution's theory of the case, petitioners brutally assaulted one person and fatally stabbed another person during a barroom fight. According to the state's evidence, neither victim was armed. Petitioners' theory of defense was self-defense. Both sides presented eyewitness testimony and petitioners testified on their own behalf. Defense counsel had also subpoenaed Eugene Marts as a character witness. At the time of the trial Marts was employed as a police officer by the Hillsdale Police Department.[2] During the trial, apparently on the second day of the five-day trial, Marts told defense counsel that appearing as a witness would be a hardship and that he could lose his job. Defense counsel did not attempt to enforce the subpoena. Marts would have been petitioners' only defense character witness.

---

1. A full statement of the facts is set forth in the state appellate court's opinion which is reported at 604 S.W.2d 662, 663 (Mo.App.1980).

2. The case was investigated by St. Louis City police officers; Hillsdale is a community located within neighboring St. Louis County.

The jury found petitioners guilty of common assault and second degree murder. The jury was unable to agree on an appropriate sentence to any of the charges. The state trial court then sentenced each petitioner to consecutive terms of thirty days for the assault and seventy-five years for the murder. 604 S.W.2d 662 (Mo.App. 1980).[3] The convictions were affirmed by the Missouri Court of Appeals. Petitioners' motion to transfer to the supreme court was denied on October 15, 1980. Petitioners then filed their joint petition for writ of habeas corpus in federal district court; the district court referred the petition to a federal magistrate pursuant to 28 U.S.C. § 636(b). Following an evidentiary hearing on the claim of witness intimidation in August 1981, the magistrate recommended that petitioners' unexhausted claims be dismissed without prejudice and that petitioners' exhausted claims, including the claim of witness intimidation, be dismissed with prejudice. Peeler v. Wyrick, No. 80–1617C(4) (E.D.Mo. Dec. 23, 1981) (report and recommendation of magistrate).[4] On March 3, 1982, the district court adopted the magistrate's recommendation except with respect to the claim of witness intimidation. Also on March 3, 1982, the Supreme Court decided Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), holding that federal district courts should not consider mixed habeas petitions. Accordingly, the district court vacated its earlier order and granted petitioners leave to file an amended petition alleging only exhausted claims. Petitioners then filed an amended petition. The district court dismissed with prejudice all petitioners' claims except the witness intimidation claim. Peeler v. Wyrick, No. 80–1617C(4) (E.D.Mo. Apr. 8, 1982) (order). Following further consideration, the district court found that Marts had been intimidated, but under the circumstances the intimidation was not chargeable to the prosecution and, for the reasons set forth by the magistrate, Marts' failure to testify did not prejudice their defense and therefore denied the petition for writ of habeas corpus. This appeal followed. The only issue raised on appeal involves the claim of witness intimidation.

**3.** Defense counsel raised the claim of witness intimidation for the first time in the motion for new trial. Furthermore, no offer of proof was made as to why any error could not have been cured by the testimony of others. Defense counsel did not raise the witness intimidation issue during trial because at that time he was not aware of the reason why Marts believed that testifying in petitioners' case on their behalf would cause job problems. Following a hearing on the motion for new trial, the state trial court denied the motion. The state court of appeals agreed that Dunn had intimidated Marts but found that Marts' failure to testify did not warrant a new trial because there was no evidence that the state encouraged or condoned the intimidation or that Marts knew anything about the offenses with which petitioners were charged. 604 S.W.2d at 664.

**4.** The magistrate found that Hillsdale Chief of Police Nathaniel Dunn did intimidate Marts into not testifying as a defense character witness by threatening Marts with termination. Peeler v. Wyrick, No. 80–1617C(4), slip op. at 14 (E.D.Mo. Dec. 23, 1981) (report and recommendation of magistrate). The magistrate also found that the investigator assigned to the prosecuting attorney contacted Dunn and thus "set in motion a chain of events which ultimately led to the intimidation of Marts." Id. at 15. The magistrate also held that the intimidation should be chargeable to the prosecution even though the investigator did not intimidate or threaten Marts: "We do not think the [prosecutor's] office can be permitted to create a situation where pressure is applied to a subpoenaed defense witness, but nevertheless, stand idly by while another government officer coerces the witness into not testifying." Id.

The magistrate declined to follow the per se error rule set forth in United States v. Hammond, 598 F.2d 1008, 1012–13 (5th Cir.1979); United States v. Morrison, 535 F.2d 223, 227–28 (3d Cir.1976); and United States v. Thomas, 488 F.2d 334, 335–36 (6th Cir.1973) (per curiam), and instead followed harmless error analysis. Slip op. at 16–17. The magistrate determined that although Marts' testimony about his personal knowledge of petitioners' characters or their reputations for truth and veracity would not have been admissible under Missouri law, Marts' testimony about petitioners' reputations for peacefulness, moral character or honesty would have been admissible. Id. at 17–18. However, the magistrate concluded that the absence of Marts' testimony was harmless beyond a reasonable doubt because, in light of the record, any testimony about petitioners' reputations for peacefulness and moral character would have been completely refuted by the violence and brutality of the killing. Id. at 18.

## II. *Discussion*

For reversal, petitioners argue that Dunn's intimidation of Marts constituted substantial governmental interference with a defense witness' free and unhampered choice to testify and violated their constitutional right to present their own witnesses to establish their defense, citing *United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir.1979). Petitioners argue that the district court's holding that under the circumstances the intimidation was not chargeable to the prosecution is not supported by the record. Petitioners further argue that it is not necessary that the witness intimidation be "chargeable" to the prosecution in order to show a constitutional violation, citing *Webb v. Texas*, 409 U.S. 95, 97–98, 93 S.Ct. 351, 353–354, 34 L.Ed.2d 330 (1972) (per curiam). Petitioners urge the court to reject the harmless error analysis and instead to follow the automatic reversal or *per se* rule adopted by the Fifth Circuit in *United States v. Hammond*, 598 F.2d at 1013; the Third Circuit in *United States v. Morrison*, 535 F.2d 223, 228 (3d Cir.1976); the Sixth Circuit in *United States v. Thomas*, 488 F.2d 334, 335–36 (6th Cir.1973) (per curiam); and the Fourth Circuit in *Bray v. Peyton*, 429 F.2d 500, 501 (4th Cir.1970) (per curiam).

■ We refuse to follow petitioners' suggestion that we adopt the automatic reversal or *per se* rule espoused by the court in *Hammond* for three reasons: 1) *Hammond* did not involve character witness testimony and the court held alternatively that the witnesses' testimony was so important it would not be harmless error in any event; 2) this circuit's case law makes clear that the harmless error doctrine applies in cases involving witness intimidation; and 3) the analysis employed in *Hammond* appears to have been undermined by the Supreme Court in *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

Although the *Hasting* decision addressed the issue of prosecutorial misconduct, the Court reaffirmed the applicability of the harmless error doctrine to clear constitutional violations. The Court stated that "it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *Id.* 103 S.Ct. at 1980. The Court acknowledged that certain errors may involve rights so basic to a fair trial that their infraction can never be deemed harmless error; however, the Court's examples only included the right to counsel, an impartial judge, and coerced confession. *Id.* at 1980 n. 6. Thus, it seems clear that the Court in *Hasting* directs this court to apply the harmless error rule in cases such as this.

While this court has not addressed the exact issue involved on this appeal, two decisions appear to be controlling. In *Ray v. United States*, 588 F.2d 601 (8th Cir. 1978) a petitioner claimed that he was denied a fair trial because the FBI allegedly coerced a codefendant into not testifying at trial. This court found that such corruption may be a deprivation of fundamental due process, and stated "the standard to be applied in determining whether a new trial should be granted is whether there is any reasonable likelihood that the new evidence could have affected the judgment of the jury." *Id.* at 603. Based on its review of the record, which disclosed overwhelming evidence of guilt, and considering the nature of the proposed testimony, the court concluded that the testimony would not have affected the judgment of the jury.

More recently, in *Thomas v. Wyrick*, 687 F.2d 235 (8th Cir.1982), *cert. denied*, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983) a defendant challenged his conviction alleging that he was deprived of due process and his sixth amendment right to compulsory process when the trial court refused to allow a defense character witness to testify because the defendant had failed to comply with state procedural rules. This court stated: "Nevertheless, even if the trial court's exclusion of character witnesses were deemed to be constitutional error, it would not affect the result in this case. If there were constitutional error, it would be harmless beyond a rea-

sonable doubt." *Id.* at 241. Thus, in light of *Hasting, Ray,* and *Thomas, supra,* we find that the harmless error rule is applicable to the case at bar.

■ Petitioners allege that even if the harmless error rule is applied, they were prejudiced by the exclusion of their character witness. We disagree. Even if we assume that Marts' character testimony was admissible, petitioners do not adequately explain how this would have affected the outcome of the case. Petitioners do not address the facts that show that even after the victim had attempted to flee, they pursued him into the bar and continued to stab him until he was dead. Based upon our review of the record, the evidence of guilt is overwhelming and petitioners' own testimony was inconsistent with their defense. The victim was unarmed when they attacked him. In light of the strong case against petitioners, there is no reasonable possibility that the testimony of one character witness would have affected the jury's verdict.

In conclusion, we find that any error which may have occurred was harmless error due to the overwhelming evidence of guilt. Because the resolution of this issue is dispositive, we will not reach the issue of whether the witness intimidation could be charged to the prosecution under these circumstances. The judgment of the district court dismissing the petition is affirmed.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I am not convinced that the missing testimony of the defense character witness was harmless beyond a reasonable doubt. In my opinion, the missing testimony would have been material and favorable to the defense, the "unavailability" of the defense character witness should not be attributed to the defense, and there is a reasonable likelihood that the character evidence could have affected the judgment of the jury. For those reasons, I would reverse the order of the district court denying the petition and remand to the district court with directions to grant the petition unless the state retries petitioners within a reasonable time.

As a preliminary matter, I would reject the state's argument that habeas corpus relief is precluded by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The state argues that petitioners waived the witness intimidation claim because counsel did not enforce the subpoena to compel Marts to testify and because there was no offer of proof made about Marts' testimony. I do not think that the present case is an appropriate one for waiver. The failure by defense counsel to enforce the subpoena is not critical; there is a significant difference between the free and open testimony of a voluntary witness and the guarded and possibly hostile testimony of a reluctant witness whose presence has been compelled by judicial process. *See United States v. Thomas,* 488 F.2d 334, 336 (6th Cir.1973) (per curiam). Nor do I think that the failure to make an offer of proof can be held to constitute a waiver under these circumstances. Defense counsel did not know during trial that Marts was reluctant to testify because he had been intimidated by Dunn. At that time defense counsel understood only that the witness was unable to testify, presumably for legitimate reasons. As noted in the majority opinion, defense counsel raised the witness intimidation claim for the first time in the motion for new trial. The correct procedure requires an offer of proof; however, in view of the somewhat standard content of the testimony of character witnesses, which often consists of little more than a statement of the length and nature of the witness' acquaintance with the defendant and the witness' opinion about the defendant's character, there is no reason to believe that the substance of their witness intimidation claim was concealed from the state courts. Moreover, procedural defaults may be excused, notwithstanding the bar of *Wainwright v. Sykes,* where the state court reaches the merits of the constitutional claim despite a procedural default. *See County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979);

*Thompson v. Estelle*, 642 F.2d 996 (5th Cir.1981). *But see Phillips v. Smith*, 717 F.2d 44, 47–52 (2d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1287, 79 L.Ed.2d 689 (1984). Here, the state appellate court noted petitioners' failure to make an offer of proof but then reached the merits of the claim. *State v. Peeler*, 604 S.W.2d 662, 664–65 (Mo.App.1980). The court noted that there was no evidence that the state encouraged or condoned the intimidation of Marts and that Marts' testimony could not have changed the outcome of the trial. *Id.*

It is undisputed that Marts was intimidated by Dunn and as a result did not testify for the defense as a character witness. The state argues that the actions taken by Dunn, a governmental officer who was not involved in the investigation or prosecution of the charges against petitioners, should not be attributable or chargeable to the prosecution because the prosecutor knew nothing about and did not condone or participate in the intimidation. As noted in the memorandum of the magistrate, the police department investigator assigned to the prosecutor called Dunn to inform him of Marts' continued attendance at the trial and thus "set in motion" the events in question. Thus, there was a connection between the investigator, Dunn and Marts.

I do not in any way question the prosecutor's good faith or lack of knowledge about the incident. I simply do not think the fact that the prosecutor knew nothing about the incident is relevant. Due process violations have been found in cases where the governmental interference was unknown to the prosecutor and conducted by persons not associated with the particular prosecutor's office. *See Webb v. Texas*, 409 U.S. 95, 97, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972) (defense witness intimidated by lengthy remarks of trial judge about penalties for perjury); *United States v. Goodwin*, 625 F.2d 693, 702–03 (5th Cir.1980) (prisoner defense witnesses allegedly intimidated by prison officials). I would draw an analogy to cases involving the suppression of exculpatory evidence, in which the Supreme Court has rejected the good faith or bad

faith of the prosecutor as the controlling factor. *See United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976) ("If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor."); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

Nonetheless, the typical witness intimidation case involves misconduct by a governmental official who, unlike the chief of police in the present case, is involved either in the prosecution or investigation of the case, or who acts as "an arm of the prosecution." *See, e.g., Wedra v. Thomas*, 671 F.2d 713, 717–18 n. 1 (2d Cir.) (investigating detectives), *cert. denied*, 458 U.S. 1109, 102 S.Ct. 3491, 73 L.Ed.2d 1372 (1982); *United States v. Goodwin*, 625 F.2d at 702–03 (prosecutor); *United States v. Hammond*, 598 F.2d 1008, 1012–13 (5th Cir.1979) (investigating FBI agent); *Ray v. United States*, 588 F.2d 601, 602–03 (8th Cir.1978) (investigating FBI agents); *United States v. Henricksen*, 564 F.2d 197, 198 (5th Cir. 1977) (per curiam) (intimidation by terms of plea bargain); *United States v. Sutton*, 542 F.2d 1239, 1241–42 (4th Cir.1976) (investigating FBI agent); *United States v. Morrison*, 535 F.2d 223, 225–28 (3d Cir. 1976) (actions and remarks of prosecutor); *United States v. Thomas*, 488 F.2d at 335 (investigating secret service agent); *cf. Freeman v. Georgia*, 599 F.2d 65, 69 (5th Cir.) (investigating homicide detective conceals eyewitness for wholly personal reasons), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1979). In the present case Dunn was a governmental officer but was not involved in the investigation or prosecution of petitioners' case. In my opinion Dunn's status as a governmental officer is the controlling factor. Intimidation of witnesses by anyone is intolerable

and may be actionable in a separate proceeding, depending upon the circumstances, see, e.g., Chahal v. Paine Webber, Inc., 725 F.2d 20 (2d Cir.1984) (civil rights action pursuant to 42 U.S.C. § 1985(2) which prohibits conspiracies to deter witnesses from attending or testifying freely to any matter pending in federal court); substantial governmental interference with witnesses is to be doubly condemned. Such governmental interference with defense witnesses not only violates the due process right of defendants to "present [their] own witnesses to establish a defense," Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), but also "involve[s the government] in corruption of the truth-seeking function of the trial process," Ray v. United States, 588 F.2d at 602.

Marts would have been petitioners' only character witness: the other defense witnesses were eyewitnesses, medical records custodians, an investigator hired by defense counsel, and petitioners themselves. Marts would have testified about petitioners' reputations for peacefulness and honesty and as law-abiding citizens.

> Evidence of a person's character or of a trait of his character is admissible if it is evidence of a pertinent trait in light of the elements of the offense charged. Fed.R.Evid. 404(a). It has long been recognized that a defendant may introduce character testimony to the effect that "the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged."

United States v. Darland, 626 F.2d 1235, 1237–38 (5th Cir.1980) (citing Michelson v. United States, 335 U.S. 469, 476, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948)), cert. denied, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982). Accord State v. Allen, 641 S.W.2d 471, 473 (Mo.App.1982) (character evidence is admissible and relevant to show the improbability of the defendant's committing the crime charged and in substantive proof of his innocence) (citing State v. Demaree, 362 S.W.2d 500, 506 (Mo.1962) (banc) (self-defense)). This character evidence was admissible and relevant. Evidence that petitioners were law-abiding citizens would have made it less likely that they would have violated the law. In addition, character evidence would have required the state trial court to give the jury an appropriate instruction on character evidence. See, e.g., State v. Underwood, 530 S.W.2d 261, 262 (Mo.App.1975); see also 1 Mo. Approved Instructions 2d-Crim. 2.50 (1979). Cf. Michelson v. United States, 335 U.S. at 476, 69 S.Ct. at 218 (in federal court character evidence alone may be enough to raise reasonable doubt of the guilt of the accused and may entitle the accused to an appropriate jury instruction to that effect).

Having concluded that this character evidence should have been admitted, I further conclude that this evidence could have affected the judgment of the jury and that its exclusion was not harmless beyond a reasonable doubt. This analysis does not follow the per se rule adopted by the Fifth Circuit in United States v. Hammond, 598 F.2d at 1012–13, by the Third Circuit in United States v. Morrison, 535 F.2d at 227–28, and by the Fourth Circuit in United States v. Thomas, 488 F.2d at 335–36. As noted in the majority opinion, the harmless error analysis is consistent with the recent Supreme Court decisions, United. States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 1979–80, 76 L.Ed.2d 96 (1983), and United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), and this court's decision in Thomas v. Wyrick, 687 F.2d 235, 241 (8th Cir.1982), cert. denied, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983). I have reviewed the record and agree with the majority opinion's description of the crime; petitioners stand convicted of a brutal assault and murder. Their theory of defense was self-defense; evidence tending to show that petitioners were peaceable and law-abiding citizens would have been particularly relevant to their theory of defense. Even given the substantial evidence of guilt in the record, which I admit persuades me that petitioners are probably guilty of the offenses charged, I cannot conclude that the

exclusion of this character evidence was harmless beyond a reasonable doubt. *Cf. United States v. Angelini*, 678 F.2d 380, 382 (1st Cir.1982) (direct appeal; not harmless error); *United States v. Watson*, 669 F.2d 1374, 1383 (11th Cir.1982) (similar); *United States v. Hewitt*, 634 F.2d 277, 280 (5th Cir.1981) (similar); *United States v. Darland*, 626 F.2d at 1238 (similar); *State v. Allen*, 641 S.W.2d at 473 (reversible error; very strong evidence).

I would reverse the order of the district court and remand with directions.